## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY ORAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| NIELSEN HOLDINGS PLC, JAMES A. | ) | |
| ATTWOOD JR., DAVID KENNY, | ) | |
| GUERRINO DE LUCA, KAREN M. | ) | |
| HOGUET, JANICE MARINELLI MAZZA, | ) | |
| JONATHAN MILLER, DAVID | ) | |
| RAWLINSON, NANCY TELLEM, | ) | |
| LAUREN ZALAZNICK, THOMAS H. | ) | |
| CASTRO, HARISH MANWANI, ROBERT | ) | |
| C. POZEN, and JAVIER G. TERUEL, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      On October 31, 2020, Nielsen Holdings plc's ("Nielsen" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused Nielsen to enter into a stock purchase agreement (the "Agreement") with Indy US Bidco, LLC, a Delaware limited liability company ("US Purchaser"), and Indy Dutch Bidco B.V. ("Dutch Purchaser," and together with US Purchaser, the "Purchasers").  The Purchasers are affiliates of Advent International Corporation, a Delaware corporation.

2.      Pursuant to the terms of the Agreement, among other things, the Purchasers will acquire Nielsen's Global Connect business (the "Global Connect Business") through a sale of the

equity interests of certain subsidiaries held by the Company that operate the Global Connect Business for $2.7 billion in cash (the "Proposed Transaction").

3.       On December 1, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.       The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.       This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.       Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.       Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Nielsen common stock.

9.     Defendant Nielsen is a public limited company formed under the laws of England and Wales and a party to the Agreement.  Nielsen's common stock is traded on the New York Stock Exchange under the ticker symbol "NLSN."

10.     Defendant James A. Attwood Jr. is Chairman of the Board of the Company.

11.     Defendant David Kenny is Chief Executive Officer and a director of the Company.

12.     Defendant Guerrino De Luca is a director of the Company.

13.     Defendant Karen M. Hoguet is a director of the Company.

14.     Defendant Janice Marinelli Mazza is a director of the Company.

15.     Defendant Jonathan Miller is a director of the Company.

16.     Defendant David Rawlinson is a director of the Company.

17.     Defendant Nancy Tellem is a director of the Company.

18.     Defendant Lauren Zalaznick is a director of the Company.

19.     Defendant Thomas H. Castro is a director of the Company.

20.     Defendant Harish Manwani is a director of the Company.

21.     Defendant Robert C. Pozen is a director of the Company.

22.     Defendant Javier G. Tereul is a director of the Company.

23.     The defendants identified in paragraphs 10 through 22 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### *Background of the Proposed Transaction*

24.     On October 31, 2020, Nielsen's Board caused the Company to enter into the Agreement with the Purchasers.

25.     Pursuant to the terms of the Agreement, among other things, the Purchasers will acquire Nielsen's Global Connect Business through a sale of the equity interests of certain subsidiaries held by the Company that operate the Global Connect Business for $2.7 billion in cash.

26.     According to the press release announcing the Proposed Transaction:

Nielsen Holdings plc ("Nielsen") (NYSE: NLSN) announced today that it has signed a definitive agreement under which affiliates of Advent International ("Advent"), one of the largest and most experienced global private equity investors, in partnership with James "Jim" Peck, former Chief Executive Officer of TransUnion, will acquire the Nielsen Global Connect business for $2.7 billion (subject to working capital, cash, debt-like items and other customary adjustments). Nielsen will also receive warrants in the new company exercisable in certain circumstances. Upon completion of the transaction, Nielsen Global Connect will be a private company with the flexibility to continue investing in the development and deployment of leading-edge measurement products and solutions. The transaction was unanimously approved by Nielsen's Board of Directors. . . .

Background on Nielsen Global Connect and Transaction Details

Nielsen Global Connect provides consumer packaged goods manufacturers and retailers with actionable information and a complete picture of the complex and changing marketplace that brands need to innovate and grow their business. The company offers data and builds tools that use predictive models to turn market observations into business decisions and winning solutions. These data and insights provide the essential foundation that makes markets possible in the rapidly evolving world of commerce. . . .

Advisors

J.P. Morgan Securities LLC and Guggenheim Securities, LLC are acting as financial advisors to Nielsen, and Wachtell, Lipton, Rosen & Katz, Clifford Chance LLP, DLA Piper, and Baker McKenzie are serving as legal advisors to Nielsen. Ropes & Gray LLP and Weil, Gotshal & Manges LLP are serving as legal counsel to Advent and BofA Securities is serving as lead financial advisor, with Deutsche Bank Securities Inc., RBC Capital Markets and UBS Investment Bank also advising. Financing for the transaction is being arranged and provided by Bank of America, UBS Investment Bank, Barclays, Deutsche Bank AG New York, HSBC, RBC Capital Markets, MUFG and Wells Fargo.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

27.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28.     As set forth below, the Proxy Statement omits material information.

29.     First, the Proxy Statement omits material information regarding the Company's financial projections.

30.     The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate Adjusted Standalone EBITDA (Post-SBC) and Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

31.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32.     Second, the Proxy Statement omits material information regarding the financial analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("JPM").

33.     With respect to JPM's Trading Multiples Analysis, the Proxy Statement fails to disclose JPM's basis for selecting a multiple reference range for FV/CY 2021E EBITDA of 5.5x-6.0x.

34.     With respect to JPM's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values used in the analysis; (iii) JPM's basis for applying terminal growth rates ranging from 0.0% to 1.0%; and (iv) the individual inputs and assumptions underlying the discount rates from 8.75% to 9.75%.

35.    With respect to JPM's Transactions Multiples Analysis, the Proxy Statement fails to disclose JPM's basis for selecting a multiple reference range for FV/LTM EBITDA of 6.5x-9.0x.

36.    With respect to JPM's Alternative Trading Multiples Analysis, the Proxy Statement fails to disclose JPM's basis for selecting a multiple reference range for FV/CY 2021E EBITDA-Capex of 6.0x-7.0x.

37.    With respect to JPM's Equity Research Analyst Valuations analysis, the Proxy Statement fails to disclose: (i) the equity research analyst valuations used in the analysis; and (ii) the sources thereof.

38.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39.    Third, the Proxy Statement omits material information regarding JPM.

40.    The Proxy Statement fails to disclose the amount of compensation JPM and its affiliates have received or will receive for its "commercial banking affiliate [serving as] an agent bank and a lender under outstanding credit facilities of affiliated entities of Advent."

41.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42.    Fourth, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions.

43.    Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were

permitted to do so, when in fact they are or were contractually prohibited from doing so.

44.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

45.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Nielsen

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Nielsen is liable as the issuer of these statements.

48.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51.     The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

52.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

**COUNT II**

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

54.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of Nielsen within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or Board members of Nielsen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

58.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  January 21, 2021                            **RIGRODSKY LAW, P.A.**

By:    */s/ Gina M. Serra*
_____
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*